# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DOUGLAS D. SIMMONS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-14-328-JHP-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Douglas D. Simmons, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born December 2, 1952, and was fifty-nine years old at the time of the administrative hearing (Tr. 38, 149). He has a high school education and completed vocational training as a heating and air technician, and has worked as a dump truck driver and semi-truck driver (Tr. 15, 196). The claimant alleges that he has been unable to work since an amended onset date of July 25, 2011, due to incontinence following surgery to remove prostate due to cancer (Tr. 196).

**Procedural History**

On July 7, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Jeffrey S. Wolfe conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 12, 2013 (Tr. 10-17). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481

**Decision of the Administrative Law Judge**

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform the full

range of medium work,² *i.e.*, he could lift/carry fifty pounds occasionally and twenty-five pounds frequently, and sit/stand/walk six hours in an eight-hour workday, but that he could only occasionally stoop, bend, kneel, crouch, and crawl (Tr. 13). The ALJ stated specifically that there were no limitations on manipulation, no environmental limitations, and no visual limitations, but that the claimant must take a break every two hours to change his undergarments as a result of urinary incontinence (Tr. 13). The ALJ concluded that the claimant could therefore return to his past relevant work as a dump truck driver and semi-truck driver because a competitive workday usually allows breaks at two-hour intervals and that even if the semi-tractor trailer driving is excluded for lack of breaks, the dump truck driver job would not be excluded because it was local, not over-the-road, driving (Tr. 15-16). Alternatively, the ALJ concluded that there was other work the claimant could perform at the light exertional level, *e. g.*, bottling line attendant, housekeeper, and fruit cutter (Tr. 16-17). The ALJ then stated that the claimant was not disabled under Medical-Vocational Rule 203.07, aka, "the Grids." (Tr. 17).

**Review**

The claimant argues that the ALJ erred by: (i) failing to adequately evaluate his VA Disability rating, (ii) inaccurately determining that he could perform his past relevant work, (iii) further making inaccurate step five findings, and (iv) improperly applying the

---

² The ALJ stated in one section that the claimant could perform the full range of light work, but indicated in the same sentence the lifting and carrying restrictions of medium work (Tr. 13) and later referred to the RFC as medium work (Tr. 16). Accordingly, the undersigned Magistrate Judge notes and finds that the ALJ assigned the claimant an RFC of medium work.

Grids. The undersigned Magistrate Judge agrees with the claimant's first contention, and the decision of the Commissioner should therefore be reversed.

The ALJ found that the claimant had the severe impairment of status post prostatectomy (Tr. 13). The relevant medical evidence reveals that the claimant received almost all of his treatment through Department of Veterans Affairs (VA) facilities. During his treatment there, the claimant's psa levels revealed that he had cancer and he underwent surgery (Tr. 444, 453). As a result of the surgery, the claimant began experiencing urinary continence (Tr. 575, 577, 742). Treatment notes from this time reflect that on March 29, 2011, the claimant was having stress incontinence but it was improving, and that he had developed some urinary-related skin irritation (Tr. 394). Furthermore, the claimant was repeatedly prescribed adult briefs for incontinence protection (Tr., *e. g.*, 364).

On September 6, 2011, a consultative examiner assessed the claimant with history of cancer of the prostate, noting that he had undergone prostate surgery and started leaking, but at the time of the exam had "no control of his bladder," lower back pain with normal movements of the lumbar spine and normal movements of the cervical spine, and chest discomfort (Tr. 506).

On July 9, 2012, the claimant filed for disability benefits with the VA, and on October 11, 2012, he was found entitled to a nonservice-connected pension (Tr. 259). Upon reviewing the claimant's medical record, the finding stated that the claimant suffered from "residuals of prostatectomy which was a treatment of [his] previous prostate cancer. The residuals include chronic urine leakage resulting in accidents and

difficulty in managing the effects, clean-up, etc.," and noted the claimant's report that he could not return to his work as a truck driver because he could not remain in one place for an extended period of time due to the need to tend to leakages (Tr. 260). This was found to be permanent, because "[t]he evidence of record shows that [his] chronic urinary incontinence renders [him] unable to secure or follow a substantially gainful occupation and is rated at 60 percent or more" (Tr. 260). The clamant had previously also been determined to have a 10% service-connected disability of degenerative arthritis of the lumbar spine, with an overall or combined rating of 20% (Tr. 235).

Additionally, radiological evaluation of the lumbosacral spine revealed lumbar spine degenerative spondyloarthropathy on July 19, 2011, and mild arthrosis of the acriomiclavicular joint on March 8, 2011 (Tr. 279, 283). Follow-up scans of the lumbosacral spine on April 9, 2012 revealed moderate degenerative joint disease, and the claimant continued to complain of low back pain and inability to sleep as a result (Tr. 626, 701, 788).

At the administrative hearing, the ALJ stated that he was having a difficult time understanding how the claimant's incontinence resulted in any functional limitations or how an "empirical study" would not help him to know how often he needed to change (Tr. 44). In discussing the claimant's past work as a dump truck driver and semi truck driver, the ALJ stated that normal competitive work allowed for a break at least every two hours, and the claimant responded that such breaks were not a part of his past relevant work because he had to maintain a time schedule or stay as part of a convoy (Tr. 58-61). The claimant also testified that he cannot tell when he is leaking until it runs

down his legs, and had not been able to for eight months, and that he had been told there was nothing they could do for his leakage (Tr. 62-63). The ALJ then told the claimant to put himself on a regular routine of changing undergarments every two hours (Tr. 64). The ALJ then inquired of the vocational expert (VE) regarding the claimant's past work, and she classified it and stated that there were no transferable skills (Tr. 76). The ALJ proposed a number of hypotheticals related to possible RFC findings, including a limitation that the individual must take a break to change undergarments every two hours, and the VE responded that it is customary to get a break every two hours (Tr. 78).

In his written opinion, the ALJ determined the claimant had the sole severe impairment of status post prostatectomy, with no other severe or nonsevere impairments, then determined the claimant had the above-described RFC (Tr. 13). The ALJ summarized the claimant's testimony and found he was not credible using boilerplate language, and also gave little weight to a Third Party Function Report submitted by the claimant's son because the ALJ believed that the son's statement that the claimant was limited after walking a half mile was not due to incontinence, but "more likely linked to Mr. Simmons' morbid obesity" (Tr. 14). Specifically, the ALJ made no mention of the tests related to the claimant's lumbosacral spine, nor of the mental health treatment that the claimant received at the VA, nor of the consultative examiner's report (Tr. 13-15). Moreover, the ALJ noted records concerning the claimant's chest and back pain, GERD, and depression, but only to point out that these records seemed to outnumber records related to the claimant's incontinence (Tr. 15). He then found the claimant not disabled.

The ALJ's treatment of the claimant's disability rating was deficient. The ALJ simply stated that the finding of disability went to an issue reserved to the Commissioner but did not explain why it was not persuasive. *Baca v. Department of Health & Human Services*, 5 F.3d 476, 480 (10th Cir. 1993) ("'Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered.'"), *quoting Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979). *See also Kanelakos v. Astrue*, 249 Fed. Appx. 6, 8 (10th Cir. 2007) ("[T]he ALJ mentioned the VA rating and appropriately stated that the SSA and VA standards differ. But he completely 'fail[ed] to discuss the significance of the VA's disability evaluation.'") [unpublished opinion], *quoting Grogan v. Barnhart*, 399 F.3d 1257, 1262-1263 (10th Cir. 2005) ("Although another agency's determination of disability is not binding on the Social Security Administration, 20 C.F.R. § 416.904, it is evidence that the ALJ must consider and explain why he did not find it persuasive."), *citing Baca*, 5 F.3d at 480. The ALJ was not required to give controlling weight to the disability ratings by the VA, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), but he *was* required to determine the proper weight to give such findings by applying the factors in 20 C.F.R. §§ 404.1527, 416.927. This is particularly important where, as here, the claimant only received treatment at the VA, with the exception of the CE report, but the ALJ ignored most of the medical evidence from the VA. Additionally, the ALJ took on the role of physician when he made a finding without

medical support that a break every two hours would be sufficient to accommodate the claimant's incontinence (Tr. 13). *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) ("The ALJ may not substitute his own opinion for that of claimant's doctor."), *citing Sisco v. United States Department of Health & Human Services*, 10 F.3d 739, 743 (10th Cir. 1993) *and Kemp v. Bowen*, 816 F. 2d 1469, 1475 (10th Cir. 1987).

Furthermore, the ALJ's opinion itself acknowledges (Tr. 15) that he failed to take into account the claimant's other medically-diagnosed impairments, which include, *inter alia*, morbid obesity, chest pain, lower back pain, GERD, and depression. The ALJ thus failed to properly assess the combined effect of all the claimant's impairments – whether severe or nonsevere – in assessing his RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]; *McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]"). *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). The undersigned Magistrate Judge notes that

this argument was not raised by the claimant and therefore is not the basis for recommending reversal in this case but is nevertheless important for evaluation of the medical evidence in the record on remand.

Although not specifically enumerating the other errors related to the claimant's ability to perform his past relevant work, transferable skills, and the Grids, the undersigned Magistrate Judge nevertheless finds that the ALJ's findings at these steps should *also* be reevaluated on the basis of the *entirety* of the record. Accordingly, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**